IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No. 12-cv-02446-WYD-KLM

A. W. INTERIORS, INC.,

      Plaintiff,

v.

THE TRAVELERS INDEMNITY COMPANY,

      Defendant.

_____

# ORDER

_____

THIS MATTER is before the Court on defendant, The Travelers Indemnity Company's, Motion For Summary Judgment [ECF No. 25], and plaintiff, A. W. Interiors, Inc.'s, Motion For Summary Judgment On Breach Of Duty To Defend [ECF No. 26]. For the reasons stated below, The Travelers Indemnity Company's Motion For Summary Judgment [ECF No. 25] is GRANTED and A. W. Interiors, Inc.'s Motion For Summary Judgment On Breach Of Duty To Defend [ECF No. 26] is DENIED.

## BACKGROUND

This suit arises from issues regarding the construction of a Four Seasons Hotel in Vail, Colorado ("the project" or "project").

Black Diamond Resorts-Vail Resorts LLC ("Black Diamond") was the original project owner and Layton Construction Company ("Layton") was the original general contractor. Black Diamond purchased a wrap-up commercial general liability policy from Interested Lloyd's Underwriters ("Lloyd's"), to protect against liability for the project.

On February 9, 2009, plaintiff, A. W. Interiors, Inc. ("AWI"), entered into a subcontract agreement [ECF No. 13-1, pp. 107-123] with Layton to install pocket door tracks in the hotel.  To protect against liability for its work, AWI purchased a commercial general liability policy ("the policy") from defendant, The Travelers Indemnity Company ("Travelers").

 At some point subsequent to beginning the project, Black Diamond defaulted on its loan obligations and Barclays Capital Real Estate, Inc. ("BCRE") became the new project owner.  Despite Black Diamond's default, the wrap-up policy from Lloyds remained in effect.  On June 11, 2009, BCRE sent Layton a "Notice of Termination for Convenience" which ceased all project work by Layton and all subcontractors.  BCRE then hired a different general contractor, Hyder Construction, Inc., to continue work on the project.

Layton alleged that it is owed a large sum of money for its project work, and on September 29, 2010, Layton filed a Second Amended Complaint [ECF No. 26-2] against BCRE, AWI, and numerous other defendants in Eagle County District Court, County of Eagle, Colorado, seeking *inter alia*, past due payments for its project work.  In Layton's Sixth Claim For Relief, Layton alleged that AWI and numerous other parties' work on the project "suffered from alleged defects." ECF No. 26-2, p. 26, ¶¶ 198-203. As such, Layton stated that should it be found liable for damages associated with the defective work, AWI and others are required to indemnify Layton for such damages. *Id.* In Layton's Seventh Claim For Relief, Layton alleged that if judgment is entered against it for defective project work, Layton is entitled to contribution from AWI for such defective work. *Id.* at p. 27, ¶¶ 204-206.

AWI notified Travelers of the Layton suit and requested that Travelers defend AWI in the action pursuant to the policy.  On July 14, 2011, Travelers sent AWI a Declination of Coverage Letter [ECF No. 26-11] in which it stated that "there is no coverage available for the referenced matter." ECF No. 26-11, p. 2.  Thus, AWI retained counsel to defend itself in the Layton suit.  Trial commenced in state court on April 16, 2012 and concluded on April 20, 2012.  AWI alleges that it expended $93,045.50 in defense of the Layton suit.

On September 14, 2012, AWI filed its original Complaint [ECF No. 1] against Travelers alleging that Travelers breached its duty to defend AWI in the Layton suit.  On October 2, 2012, AWI filed an Amended Complaint [ECF No. 10] asserting the same claim.  On May 15, 2013, AWI and Travelers filed cross motions for summary judgment [ECF Nos. 25 & 26] regarding Traveler's duty to defend.  Specifically, the parties dispute whether the policy's wrap-up exclusion precludes coverage for the Layton suit.  On April 9, 2014, I held a Motions Hearing and heard the parties' arguments on both motions.  I took the motions under advisement.

**ANALYSIS**

**A.  Legal Standard for a Motion for Summary Judgment**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  "When applying this standard, [the court must] 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to

the party opposing summary judgment.'" *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (citation omitted).  "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit." *Horizon/CMS Healthcare*, 220 F.3d at 1190.  "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Id.*

"The burden of showing that no genuine issue of material fact exists is borne by the moving party." *Horizon/CMS Healthcare*, 220 F.3d at 1190.  "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'"  *Atl. Richfield Co.*, 226 F.3d at 1148 (quotation omitted).  All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Sw. Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

## B.  Insurance Contract Interpretation and an Insurer's Duty to Defend

Where, as here, federal jurisdiction is predicated upon diversity, the court applies the substantive law of the forum state. *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994).  Pursuant to Colorado law, "[a]n insurance policy is merely a contract that courts should interpret in line with well-settled principles of contract interpretation." *Cyprus Amax Minerals Co. v. Lexington Ins. Co.,* 74 P.3d 294, 299 (Colo. 2003) (citations omitted).  "In undertaking the interpretation of an insurance contract, courts should be wary of rewriting provisions, and should give the words contained in the contract their plain and ordinary meaning, unless contrary intent is evidenced in the policy." *Id.* (citing *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990)).  "Courts should read the provisions of the policy as a whole, rather than reading them in

isolation." *Id.* (citing *Simon v. Shelter Gen. Ins. Co.*, 842 P.2d 236, 239 (Colo. 1992)).

The Colorado Supreme Court has cautioned that:

> Courts may neither add provisions to extend coverage
> beyond that contracted for, nor delete them to limit coverage.
> However, because of the unique nature of insurance
> contracts and the relationship between the insurer and
> insured, courts do construe ambiguous provisions against
> the insurer and in favor of providing coverage to the insured.

*Id.* "A court's interpretation of an insurance contract is a matter of law subject to de

novo review." *Id.* (citing *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo.

1993)).

In determining whether an insurer breached its duty to defend an insured,

Colorado courts apply the "complaint rule." *Cyprus*, 74 P.3d at 299.  The Supreme Court

of Colorado has stated that:

> The duty to defend concerns an insurance company's duty
> to affirmatively defend its insured against pending claims.
> We have long held that to determine whether a duty to
> defend exists, courts must look no further than the four
> corners of the underlying complaint (the "four corners" or
> "complaint" rule).  An insurer is not excused from this duty
> unless there is no factual or legal basis on which the insurer
> might eventually be held liable to indemnify the insured.
> Hence, if the alleged facts even potentially trigger coverage
> under the policy, the insurer is bound to provide a defense.

*Id.* (internal quotation marks and citations omitted).  The Supreme Court of Colorado

has also stated that:

> An insurer seeking to avoid its duty to defend an insured
> bears a heavy burden.  An insurer's duty to defend
> arises when the underlying complaint against the insurer
> alleges any facts that might fall within the coverage of the
> policy.  The actual liability of the insured to the claimant is
> not the criterion which places upon the insurance company
> the obligation to defend.  Rather, the obligation to defend
> arises from allegations in the complaint, which if sustained,

would impose a liability covered by the policy.  Where the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim.

*   *   *   *

The insurer has a duty to defend unless the insurer can establish that the allegations in the complaint are solely and entirely within the exclusions in the insurance policy. An insurer is not excused from its duty to defend unless there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured.

*Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1089-90 (Colo. 1991)

(internal quotation marks and citations omitted).

Pursuant to these mandates by the Supreme Court of Colorado, I must identify the relevant portion of the policy then determine whether allegations in the Layton suit trigger coverage from the policy.

## C. The Wrap-Up Exclusion

### 1. Applicable Exclusion from Travelers' Declination of Coverage Letter [ECF No. 26-11]

At the outset, there is dispute as to which provisions Travelers may rely on to defend itself from AWI's claim that Travelers breached its duty to defend.  The logical beginning of this analysis is Travelers' Declination of Coverage Letter [ECF No. 26-11].

Travelers declined coverage for the Layton suit based on a "wrap-up" exclusion. In its Declination of Coverage Letter [ECF No. 26-11] ("the letter"), Travelers cites two different wrap-up exclusions.  The first exclusion cited on page 3 of the letter refers to AWI's policy (Policy Number I-680-1070N978-IND-09) with a policy period of January 1,

- 6 -

2009 to January 1, 2010.  The second exclusion cited on page 3 of the letter refers to

AWI's policies (Policy Numbers I-680-1070N978-IND-10 and I-680-1070N978-TIL-11)

with a policy period of January 1, 2010 to January 1, 2012.

All work on the project by Layton and its subcontractors, including AWI, ceased

during the summer of 2009.  The policy that protected AWI for liability on its work during

that time would be Policy Number I-680-1070N978-IND-09 with a policy period of

January 1, 2009 to January 1, 2010.  Thus, that is the operative policy in this matter.

### 2.  Whether Travelers Waived Any Other Defense Of Coverage

The wrap-up exclusion is the only basis for denying coverage stated in Travelers'

letter.  As such, AWI states that Travelers waived any other defense of coverage.  I

need not address waiver because I find that the wrap-up exclusion in Policy Number I-

680-1070N978-IND-09 excludes coverage for the Layton suit.  My analysis and

conclusion is stated in detail below.

### 3.  The Wrap-Up Exclusion In Policy Number I-680-1070N978-IND-09

As previously stated, the wrap-up exclusion in Policy Number I-680-1070N978-

IND-09 is the operative exclusion in this matter.  The wrap up exclusion states:

> 1.  The following exclusion is added to paragraph 2.
> Exclusion of Coverage A – Bodily Injury and Property
> Damage Liability (Section 1 – Coverages) and Coverage B –
> Personal and Advertising Injury Liability (Section 1 –
> Coverages):
>
> This insurance does not apply to "bodily injury," "property
> damage," "personal injury" or "advertising injury" arising out
> of any operation performed by you or on your behalf on or
> from all premises covered under a contractor controlled
> insurance program or owner controlled insurance program,
> "wrap up" or other similar insurance program.
> This exclusion does not apply to "bodily injury" and "property
> damage" included within the "products-completed operations

hazard" if all coverage available to the insured for the "products-completed operations hazard" in a contract controlled insurance program or owner controlled insurance program, "wrap-up" or other similar insurance program is no longer in effect.

2.  The following is added to DEFINITIONS (Section V):

"Wrap-up" means any agreement or arrangement under which some or all the contractors working on a specific project are insured under one or more policies issued specifically for "bodily injury," "property damage," "personal injury," or "advertising injury" arising out of the project.

ECF No. 10-1, p. 110, ¶¶ 1-2.  Based on the wrap-up exclusion's plain language, certain elements must be established in order for the exclusion to bar coverage for the Layton suit.  Specifically:  (1) there must be bodily injury, property damage, personal injury or advertising injury; (2) such injuries and/or damage must have arisen out of any operation performed by AWI or on AWI's behalf; and, (3) such operation must have been performed on premises covered under a contractor controlled insurance program or owner controlled insurance program, wrap up or other similar insurance program.  In the event that such facts exist, the wrap-up exclusion does not automatically bar coverage for the Layton suit.  An exception to the wrap-up exclusion exists.  Pursuant to the exception, the wrap-up exclusion does not apply if:  (1) the bodily injury and property damage is within the "products-completed operations hazard;" and, (2) all coverage available to the insured for the "products-completed operations hazard" in a contract controlled insurance program or owner controlled insurance program, "wrap-up" or other similar insurance program is no longer in effect.  Thus, analysis of the wrap-up exclusion is two-fold.  First, I must determine whether facts exist which trigger application of the wrap-up exclusion.  Second, if such facts exist, I must then determine

whether the exception applies to bar application of the wrap-up exclusion.  Pursuant to

well-settled Colorado state law, I must look to allegations in the Second Amended

Complaint in the Layton suit to determine whether the wrap-up exclusion applies.

### a.  Whether the Wrap-Up Exclusion Applies

#### i.  Bodily Injury, Property Damage, Personal Injury or Advertising Injury

The Second Amended Complaint in the Layton Suit alleges property damage and

the parties do not dispute this fact.

#### ii.  Whether the Alleged Injury and/or Damage Arose Out of Any Operation Performed By AWI or on AWI's Behalf

 In Layton's Sixth Claim For Relief (Indemnification) in the state court case,

Layton states that "to the extent Layton may be found liable for [] any acts or *omissions*

of A.W. Interiors or Continuing Subcontractors, Layton is entitled to indemnification for

all damages and costs." ECF No. 26-2, p. 26, ¶ 202 (emphasis added).  AWI states that

because Layton used the term "omission" and the wrap-up policy refers to operations

"performed," the wrap-up exclusion does not apply.  Essentially, AWI states that in the

context of this exclusion, the word "performed" only encompasses affirmative acts, not

omissions.

AWI offers no case law to support interpreting the word "performed" to

encompass only affirmative acts.  The drafter of the wrap-up exclusion could have

written in this distinction if indeed a distinction was intended.  However, the drafter

chose not to do so.  Assuming *arguendo*, that the drafter intended the exclusion to apply

only to affirmative acts, that would mean the exclusion would bar coverage in a situation

where the insured affirmatively acted and caused damage, but the exclusion would not

apply and coverage would exist when the insured failed to do some act and by doing so caused damage.  There is no evidence before me that would lead me to conclude this type of distinction was intended.  Therefore, I will not adopt AWI's proposed interpretation.  I find that the word "performed" encompasses both affirmative acts and omissions, and the alleged damage attributed to AWI in the Layton suit arose out of operations performed by AWI.

### iii. Whether the Operation(s) Performed Were on Premises Covered Under A Contractor Controlled Insurance Program or Owner Controlled Insurance Program, Wrap Up or Other Similar Insurance Program

There are two disagreements amongst the parties under this element:  (1) whether a wrap-up insurance policy exists and whether such policy was mentioned in Layton's Second Amended Complaint in the state court case; and, (2) the interpretation of the phrase "premises covered."

### (a) Existence and Reference to a Wrap-Up Policy

Under the complaint rule, I may only consider allegations in Layton's Second Amended Complaint in the state court case to determine whether Travelers breached its duty to defend.  Rule 10(c) of the FEDERAL RULES of CIVIL PROCEDURE states that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  Numerous exhibits from Layton's Second Amended Complaint reference Black Diamond's wrap-up insurance policy and AWI acknowledged that language in the contract between Black Diamond and Layton refers to a wrap-up insurance policy. *See* ECF No. 25-5, p. 1 (contract between Black Diamond and Layton) ("the amounts of the various subcontracts awarded for the Project will be reduced to reflect that liability insurance for the Project will be maintained through the 'Wrap-Up' liability insurance

program . . . "); *Id.* at p. 4 ("WRAP insurance policy is carried and paid for by the Owner

. . . "); ECF No. 25-7, p. 3 (Letter from Hyder Construction, Inc. [the new general

contractor on the project] to Home & Hearth Outfitters [a new subcontractor on the

project]) ("The Owner controlled wrap up insurance policy (OCIP) has been maintained

for the Project . . . "); ECF No. 28, p. 4, ¶ 21 (AWI's Opposition To Defendant's Motion

For Summary Judgment) ("AWI acknowledges that the quoted language [referring to the

existence of the wrap-up insurance policy] appears in the Layton-Black Diamond

contract . . . ").  Thus, there is sufficient evidence to show that a wrap-up insurance

policy exists.

### (b) Interpretation of the Phrase "Premises Covered"

AWI argues that the operations it performed on the project were not on "premises

covered" by Black Diamond's wrap-up insurance policy.  Specifically, AWI states that:

> [T]he property damage claim alleged against it in the
> underlying case did not arise out of operations performed by
> AWI on premises that were 'covered' under the Interested
> Lloyd's Underwriters wrap-up policy issued for the Four
> Seasons project because Interested Lloyd's Underwriters
> has advised AWI, in no uncertain terms, that there is no
> coverage available to AWI under the wrap-up policy.

ECF No. 26, p. 12, ¶ 1.  Simply stated, AWI argues that because Lloyd's denied

coverage for the Layton suit under Black Diamond's wrap-up insurance policy, the

alleged property damage did not arise on a premise that was "covered" by Black

Diamond's wrap-up insurance policy and as such, the wrap-up exclusion does not

apply.

AWI relies on Lloyd's Declination of Coverage Letter ("letter") [ECF No. 26-13] to

support its argument.  On December 2, 2011, Lloyd's sent a letter to AWI stating that

three exclusions in Black Diamond's wrap-up insurance policy barred coverage for the Layton suit.  The letter is not a part of Layton's Second Amended Complaint.  Pursuant to the complaint rule, I must "look no further than the four corners of the underlying complaint" when determining whether Travelers breached its duty to defend. *Cyprus*, 74 P.3d at 299.  However, the United States Court of Appeals for the Tenth Circuit has predicted that the Colorado Supreme Court would recognize two narrow exceptions to the complaint rule. *See Apt. Inv. & Mgmt. Co. (AIMCO) v. Nutmeg Ins. Co.*, 593 F.3d 1188 (10th Cir. 2010); *Pompa v. Am. Family Mut. Ins. Co.*, 520 F.3d 1139 (10th Cir. 2008).  In *Pompa*, the Tenth Circuit predicted that the Colorado Supreme Court "would recognize an exception to the complaint rule if an insured's complaint contained allegations made in bad faith and 'framed to trigger an insurance policy.'" *United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, 633 F.3d 951, 960 (10th Cir. 2011).  In *AIMCO*, the Tenth Circuit predicted that the Colorado Supreme Court would recognize an exception to the complaint rule "'requiring an insurer to consider facts which it is aware of in parallel complaints that tend to show a duty to defend . . . '" *Id.* at 961 (quoting *AIMCO*, 593 F.3d at 1194).  Neither of the circumstances in *Pompa* or *AIMCO* exist in the present case.  Because the letter is not a part of Layton's Second Amended Complaint and because neither exception to the complaint rule applies, I will not consider the letter in determining whether Traveler's breached its duty to defend.

### (1) Premises

"In both popular and legal usage, the term 'premises' refers to real property . . . " *United States v. Young*, 263 Fed. Appx. 710, 714 (10th Cir. 2008) (unpublished)

(citations omitted).[1]  Thus, the question is whether the alleged property damage arose from work performed by AWI on real property covered by Black Diamond's wrap-up insurance policy.

## (2) Covered

AWI argues that "covered" is ambiguous because it is not defined in the policy and because it is susceptible to more than one reasonable interpretation.  I disagree.  AWI's argument regarding the meaning of "covered" is based on the letter from Lloyd's, which I cannot consider under the complaint rule.  Thus, I need not address AWI's argument which is based on the letter from Lloyd's.

When I read the phrase "premises covered," I interpret that to mean any real property that is identified in the policy for the purpose of insuring the property against harm.  Generally, insurance policies spell out the property that is covered by the policy e.g., the policy lists the physical address of certain property insured under the policy.  Here, best practice would be to look at Black Diamond's wrap-up insurance policy to ascertain the property that is covered by the policy to determine whether AWI's work was performed on such property.  However, the complaint rule bars me from doing so because Black Diamond's wrap-up insurance policy is not a part of Layton's Second Amended Complaint.  Thus, I am left to look at Layton's Second Amended Complaint to determine whether AWI's alleged defective work was performed on a property identified

---

[1] *Young* is an unpublished Tenth Circuit opinion regarding a criminal case.  Though *Young* is a criminal case, the Tenth Circuit's definition of "premises" is applicable in the present case.  Although "[u]npublished opinions are not precedential, [they] may be cited for their persuasive value." 10th Cir. R. 32.1(A).  Further, "if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we [the Tenth Circuit] allow a citation to that decision." *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005) (citation omitted).  The interpretation of "premises covered" is a material issue in this case and the *Young* opinion assists me in the disposition of the pending cross motions for summary judgment.  Thus, citation to *Young* is appropriate.

in Black Diamond's wrap-up insurance policy.  In Black Diamond's contract with Layton,

which is an exhibit to Layton's Second Amended Complaint, Black Diamond states that

it "purchased a Project Specific Commercial General Liability policy ('Wrap Up') for the

Work performed at the Project site." ECF No. 25-5, p. 10.  There is no evidence from

Layton's Second Amended Complaint that would suggest that AWI performed the

allegedly defective work outside the project site.  Thus, based on Layton's Second

Amended Complaint [ECF No. 26-2], I find that AWI's allegedly defective work was

performed at the project site and the project site was an insured property under Black

Diamond's wrap-up insurance policy.  Therefore, AWI's allegedly defective work was

performed on a "premise covered" by Black Diamond's wrap-up insurance policy and

the wrap-up exclusion applies to bar coverage for the Layton suit.

Having determined that the wrap-up exclusion applies to bar coverage, I must

now determine whether the wrap-up exclusion's exception applies and bars application

of the wrap-up exclusion.

### b.  Whether the Exception to the Wrap-Up Exclusion Applies

The wrap-up exclusion does not apply to:

> "[B]odily injury" and "property damage" included within the
> "products-completed operations hazard" if all coverage
> available to the insured for the "products-completed
> operations hazard" in a contract controlled insurance
> program or owner controlled insurance program, "wrap-up"
> or other similar insurance program is no longer in effect.

ECF No. 10-1.  Thus, in order for this exception to bar application of the wrap-up

exclusion, the following elements must be established:  (1) bodily injury or property

damage; (2) the bodily injury or property damage must be included within the products-

completed operations hazard; and, (3) all available coverage to the insured for the

products-completed operations hazard in the wrap-up policy must no longer be in effect.

### i. Bodily Injury or Property Damage

There is no dispute that property damage exists and is the genesis of this suit.

### ii. Whether the Property Damage Is Included Within the Products-Completed Operations Hazard

Regarding the products-completed operations hazard, the policy states, in

pertinent part:

> a.  [The Products-completed operations hazard] [i]ncludes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
>
>> (1) Products that are still in your physical possession; or
>>
>> (2) Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:
>>
>>> (a) When all of the work called for in your contract has been completed.
>>>
>>> (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
>>>
>>> (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
>>
>> Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

ECF No. 10-1, pp. 84-85.  This definition specifically states what is not included in the

products-completed operations hazard.  First, products still in the insured's possession

do not fall within the definition of products-completed operations hazard.  This provision is irrelevant because it is AWI's work, not its products, that was at issue in the Layton suit.  Second, work that has not yet been completed or abandoned is not included in the products-completed operations hazard.  Regarding work not yet completed, BCRE terminated Layton and all subcontractors contracted by Layton on June 11, 2009 via a "Notice of Termination for Convenience." ECF No. 26-2, p. 14, ¶ 86.  In its Second Amended Complaint [ECF No. 26-2], Layton states that "BCRE terminated Layton for convenience at a time *when the Project was incomplete*." *Id.* at ¶ 87 (emphasis added). Further, Layton alleged that "[t]he vast majority of the alleged 'defects' are simply incomplete work and work that was in progress." *Id.* at p. 15, ¶ 93.  BCRE subsequently hired a new general contractor, Hyder Construction, Inc., which in turn hired new subcontractors to continue work on the incomplete project. *Id.* at p. 14, ¶ 89 and p. 15, ¶ 90.

The alleged property damage attributed to AWI in the Layton suit arose out of work performed by AWI that was not completed.  Thus, the alleged property damage does not fall within the products-completed operations hazard definition.  Because the alleged property damage does not fall within the products-completed operations hazard definition, my analysis regarding whether this exception to the wrap-up exclusion applies ends here and the wrap-up exclusion applies to bar coverage for the Layton suit.

## D.  Attorney Fees and Costs

"It is well settled law that each party must generally bear its own legal expenses in a lawsuit." *Am. Family Mut. Ins. Co. v. Teamcorp, Inc.*, 835 F. Supp. 2d 1083, 1086-

87 (D. Colo. Dec. 16, 2011) (citing *Cont'l W. Ins. Co. v. Heritage Estates Mut. Hous. Ass'n*, 77 P.3d 911, 913 (Colo. App. 2003)).  "This rule, called the American Rule, is subject to express statute, court rule, or private contract to the contrary." *Id.* at 1087.

AWI states that it is entitled to recover attorney fees and costs incurred in defending itself in the Layton suit.  AWI relies on *Wheeler v. Reese*, 832 P.2d 572 (Colo. App. 1992).  In *Wheeler*, the court stated:

> [A]n insurer which contracts to defend the insured and fails to do so runs a calculated risk.  If there is an ultimate finding by the trial court of no coverage, the insurer will not be liable for the litigation expenses of its insured since it would have been entitled to reimbursement.  On the other hand, if the trial court finds that the incident resulting in liability was covered by the policy, then in addition to the expenses which the insured incurred in defending himself against the third party, the insurer also will be liable for attorney fees from the insured's action against insurer for breach of duty to defend.

832 P.2d at 577.  Relying on this statement, AWI argues that it is entitled to attorney fees and expenses incurred from the Layton suit.  Based on this statement, AWI would be entitled to attorney fees and expenses had I found that Travelers breached its duty to defend.  However, that is not the case and I found that Travelers did not breach its duty.  Further, AWI has not cited to any specific statute or provision in its policy that expressly provides for recovery of attorney fees and expenses incurred from the Layton suit.  Thus, AWI is not entitled to attorney fees and expenses incurred from the Layton suit.

## CONCLUSION

After careful consideration of the matters before this Court, I find that the wrap-up exclusion in Policy Number I-680-1070N978-IND-09 applies to bar coverage for the Layton suit and Travelers did not breach its duty to defend.  As such, it is

ORDERED that Traveler's Motion For Summary Judgment [ECF No. 25] is

**GRANTED** and AWI's breach of duty to defend claim is **DISMISSED WITH**

**PREJUDICE**.  It is

FURTHER ORDERED that AWI's Motion For Summary Judgment On Breach Of

Duty To Defend [ECF No. 26] is **DENIED**.

Dated:  May 23, 2014.

BY THE COURT:

/s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior U. S. District Judge